# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4124 | **DATE** | 4/30/2004 |
| **CASE TITLE** | Joseph Slovinec, Jr. vs. Il.Dept. Of Human Services, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to dismiss [97-1] is Granted and Plaintiff's complaint is dismissed without prejudice. Plaintiff is given 21 days from the date of this order to file an amended complaint so as to determine conclusively whether his federal claims against the Defendants are defective at law. Plaintiff's many requests for default judgment [119-1] against Defendants are denied with prejudice. Plaintiff's request to seal public court records and other requests [82-1] are denied. So is Defendants' request to impose a leave-of-court policy against future filings by Plaintiff and Defendants' request to strike a filing from the court record [102-1]. Status hearing set for May 11, 2004 at 10:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | APR 3 0 2004 | | |
| | Notified counsel by telephone. | | date docketed | | 136 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | U.S. District | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | | |

**DOCKETED**

APR 3 0 2004

JOSEPH SLOVINEC, JR. )
)
      Plaintiff )
)
      v. )    No. 02 C 4124
)
)     Judge Mark R. Filip
ILLINOIS DEPARTMENT OF HUMAN )
SERVICES, ILLINOIS LABOR RELATIONS )     Magistrate Judge Nolan
BOARD, ILLINOIS SKILLS MATCH, OF )
THE ILLINOIS DEPARTMENT OF )
EMPLOYMENT SECURITY, )
)
      Defendants. )
)

APR 3 0 2004

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Joseph Slovinec, Jr. ("Slovinec" or "Plaintiff") brought a complaint

against the Illinois Department of Human Services ("IDHS"), the Illinois Labor Relations Board

("ILRB"), and Illinois Skills Match ("ISM")—a program of the Illinois Department of

Employment Security ("IDES") (collectively, "Defendants"). Slovinec's *pro se* pleadings are

often difficult to follow. Reading them generously, it appears that he alleges or may be alleging

the following claims—(1) reverse race discrimination (presumably under Title VII); (2)

violations of the Fourteenth Amendment of the U.S. Constitution (although his filings are often

vague on this issue); (3) violation of Illinois's Whistleblower Protection Act; (4) defamation; and

(5) that the ISM program of the IDES failed to provide him with sufficient employment leads,

such that it showed a lack of good faith by the IDES in helping him get a job. Defendants move

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss for lack of subject

136

matter jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion is granted and Slovinec's complaint is dismissed without prejudice. Despite the Defendants' request that this case be dismissed with prejudice, Plaintiff will be given one final opportunity to amend his claims.[1]

I.      Procedural History

Before the Court considers Defendants' motion to dismiss, the Court will first briefly recount the procedural history of the case. In addition, the Court responds to several of Slovinec's recent filings that appear to be minimally related to Defendants' motion to dismiss and resolves a number of other pending motions that logically should be resolved before the motion to dismiss.

Slovinec filed his eight-page complaint, along with some forty pages of miscellaneous attachments, on June 7, 2002. (D.E. 1.) In his complaint and attachments, Slovinec alleges—often in scatter-shot fashion—a variety of wrongdoing on the part of Defendants. He also accuses certain government officials of ethical and other violations. While it is challenging to sort out Slovinec's precise legal claims, they appear to boil down to allegations that: (1) the IDHS subjected him to reverse race discrimination, presumably in violation of Title VII; (2) the IDHS and ILRB violated his rights under the Fourteenth Amendment; (3) the IDHS and ILRB defamed him; (4) the ILRB wrongly disposed of his labor complaint, in contravention of the Illinois Public Labor Relations Act (D.E. at 10, 16 ("Activity Which Was Inconsistent With Fair

---

[1] Although Mr. Slovinec is proceeding *pro se*, in attachments to his complaint, he explains that he has a B.A. degree from DePaul University and two Master's Degrees. (D.E. 1, Exh. A at 5). In addition, it appears that Mr. Slovinec attended one year of law school at DePaul. *See Slovinec v. DePaul Univ.*, 332 F.3d 1068, 1068 (7th Cir. 2003).

Bargaining in the Illinois Public Labor Relations Act"); and (5) that Plaintiff failed to receive sufficiently attractive employment opportunities through the IDES's ISM program. It is also somewhat unclear what Slovinec seeks in the way of damages, but the dozen-plus requests for default judgment that he has filed (five of which were denied in 2002 by Judge Norgle) make clear that he seeks at least $128,000.

Following the filing of Slovinec's complaint, the parties spent the next fifteen months litigating whether Slovinec had properly effected service of process on Defendants. On October 7, 2003, Judge Norgle referred Slovinec's case to Magistrate Judge Nolan to conduct an evidentiary hearing on the service of process issue. (D.E. 72.) On November 3, 2003, prior to the evidentiary hearing, the Illinois Assistant Attorney General representing Defendants indicated that Defendants would accept Plaintiff's service of process. (D.E. 81.) Defendants then filed the pending motion to dismiss on December 5, 2003. (D.E. 97.) Slovinec filed his response on December 29, 2003 (D.E. 106), and Defendants filed their reply on January 12, 2004. (D.E. 109.) The Executive Committee reassigned the case to this Court on March 3, 2004.

The Court notes that, in addition to many filings relating to Slovinec's complaint and the service of process dispute, Slovinec has filed a number of unsolicited documents and requests that appear to have questionable relevance to his case.[2] Slovinec has submitted four such filings

_____

[2] For example, on December 2, 2002, Slovinec submitted a document entitled "Legal Brief in Opposition to Defendants' Motion to Dismiss and in Favor of Court-Ordered Investigation of Defendants' Administrative Negligence and Obstruction of Inquiry with Neglect of Responsibilities Under Attorney General Act; and of Charges in Proposed [NLRB] Complaint." (D.E. 28.) On December 6, 2002, Slovinec filed with the Court a copy of a letter and other documents he sent to Illinois Attorney General Jim Ryan, claiming that General Ryan's office had a conflict of interest in his case. (D.E. 34.) On July 24, 2003, Slovinec submitted to the Court a copy of a "Letter of Complaint to U.S. Secretary of Human Services and a Test Grade[] and Request to Consider Public Interest Orders." (D.E. 61.) On August 19, 2003,

in the weeks since the case was reassigned to this Court. They are discussed, as relevant, in the treatment of the other issues pending before the Court.

II.     Threshold Motions and Requests of Mr. Slovinec

Mr. Slovinec makes a number of threshold requests and motions which logically should be addressed before moving to the Defendants' motion to dismiss. Plaintiff's various requests are discussed immediately below.

A.     Plaintiff's Requests to Limit Public Access to Court Filings

Slovinec makes two requests to limit public access to the court record in this case. First, Slovinec recently filed a "Request to Court to Not List Materials on Public Internet Without My Permission: Caution." (D.E. 134.) In this filing, Plaintiff requests "that the U.S. District Court not list materials on the website under my name (Slovinec, Joseph) without my prior permission." (*Id.* at 1.) Slovinec explains that he, "Plaintiff[,] is not particularly friendly and somewhat begrudging about toleration of" evidence concerning an ILRB decision concerning him that he believes is improper and incorrect. (*Id.*) Slovinec also contends that publication of the ILRB order and decision (the apparent basis for his defamation count against the ILRB) would perpetuate the harm of the alleged defamation, create "devastating publicity to my job search," and "cause me to increase damage awards by tens of thousands to hundreds of thousands of dollars." (*Id.*)

---

Slovinec filed "Two News Articles of Interest." (D.E. 67.) On November 18, 2003, Slovinec filed a copy of a letter he sent to the FBI Director, requesting a federal investigation of alleged misdeeds by the executive director of the ILRB. (D.E. 87.) On December 4, 2003, Slovinec filed a copy of a document entitled "Public Request for Ethical and Other Investigations with Copy to Chief Judge Kocoras." (D.E. 95.) The Court expresses no opinion on the underlying factual accuracy of any of these filings.

Second, in October 2003, Slovinec appears (this request is much less clear) to have sought a protective order so as to seal certain "designated pages of Illinois Labor Relations Board Records" (D.E. 82 at 1) that relate to his claims. This October 2003 motion seems to be subsumed in his more current filing concerning public access to the case file. (D.E. 134.)

The Court respectfully declines Slovinec's request to seal portions of the court file in this case. The Seventh Circuit has repeatedly emphasized that the litigation process, and the materials that are filed as part of it, are strongly presumed to be public affairs. For example, *Union Oil Co. of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000), taught that when litigants

> call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property, *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 27-29 (1994); *In re Memorial Hospital of Iowa County, Inc.*, 862 F.2d 1299, 1302-03 (7th Cir. 1988), and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible. [. . . .] Judges deliberate in private but issue public decisions after public arguments based on public records.

*Union Oil Co. of Cal.*, 220 F.3d at 568. Slovinec may believe that the ILRB's opinion and/or records do not accurately reflect the truth concerning his former employment situation with the State. But that belief is no different from many litigants' view that the evidence against them is ill-founded, or perjurious, or otherwise defective. In this regard, many criminal defendants, for example, contend that they are being framed or are being accused by perjurers, and the tradition of public access to criminal proceedings—in which the outcome of the litigation typically involves far greater consequences than a civil proceeding—is well established. The tradition of public access to judicial proceedings would mean very little if Slovinec's belief that the ILRB opinion is erroneous was sufficient to warrant sealing court files and proceedings. *See generally*

5

*id.* (teaching that "[m]ost portions of discovery that are filed and form the basis of judicial action must eventually be released—and it would go without saying that the judge's opinions and orders belong in the public domain") (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36-37 (1984)); *accord, e.g., Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999). Slovinec has not discharged his burden of showing that there is good cause within the meaning of the Federal Rules of Civil Procedure to preclude access to the materials he seeks to keep from public view.

B. Plaintiff's Suggestion That The Court Should Commission A Legal Opinion from the Inspector General for the Office of the Governor of the State of Illinois Concerning Enforcement Authority Within Illinois State Government

Slovinec recently filed a copy of "Plaintiff's Letter to U.S. Attorney John Ashcroft of March 18, 2004." (D.E. 127.) Reading this letter generously to Plaintiff, it appears that Plaintiff asks the Court to "commission a legal opinion from Inspector General Z. Scott," the Inspector General for the Office of the Governor of the State of Illinois, concerning "who was responsible for investigating misconduct on boards and commissions appointed by the Governor between July 31, 2002 and April 2003 when she [Ms. Scott] started her term." (*Id.* at 3.) Slovinec appears to believe such a step is warranted because "[t]he offices of Attorney Generals [sic] James Ryan and Lisa Madigan have continuously refused to cooperate with any of my requests for investigations. . . ." (*Id.*) Although it is difficult to determine exactly why Slovinec believes investigations are appropriate, it appears that he believes they would produce evidence in support of his claims and otherwise are needed to address criminal and other misconduct.

The Court respectfully declines Slovinec's request. The elected and appointed officials of the State of Illinois are responsible for exercising and stewarding the investigatory authority of

6

the State. Slovinec has offered no basis for this Court to interfere in their exercise of their authority or to otherwise attempt to second-guess their exercise of prosecutorial or investigative discretion. Slovinec will need to prove his case, if he can state a viable claim, though the ordinary mechanisms available under the Federal Rules of Civil Procedure.

C.      Plaintiff's Request for Default Judgment and Related Rule 60(b) Filings

A review of the docket sheet indicates that Plaintiff appears to have filed some twelve requests for default judgment against Defendants. For example, on five occasions in 2002, Plaintiff filed various documents which sought default judgments against the Defendants. (D.E. 8, D.E. 12, D.E. 14-16, D.E. 18, D.E. 29.) By minute order of December 4, 2002, Judge Norgle denied Slovinec's requests for an order of default against the Defendants because "Plaintiff has failed to show that each defendant was properly and timely served" under the Federal Rules of Civil Procedure. (D.E. 25.)

The parties then appear to have engaged in a lengthy and contentious battle concerning whether the Defendants had been properly served. This issue was slated to be the subject of an evidentiary hearing before Magistrate Judge Nolan on November 6, 2003 (D.E. 81); however, on November 3, 2003, Illinois Assistant Attorney General Debbie Allen, counsel for the Defendants, informed Judge Nolan that she would accept service of process. (*Id.*) On November 6, 2003, Judge Nolan recommended to Judge Norgle that the service issue was moot, that accordingly there was no need for the planned evidentiary hearing to take place, and Judge Nolan also set a schedule for the parties to proceed forward into addressing the merits of the case. (D.E. 84.) On November 10, 2003, Judge Norgle agreed that the service issue was moot, and he additionally denied Plaintiff's motion for sanctions. (D.E. 85.)

Shortly thereafter, on November 13, 2003, Plaintiff again began to file documents that appear to have resumed his efforts for a default judgment. In essence (again, it is often difficult to discern the exact basis for Plaintiff's arguments), Plaintiff appears to believe that because the State's service-of-process objection was, in his view, unfounded, he is now entitled to a default judgment against the Defendants—who agreed eventually to accept service through their attorney and to litigate the merits of the case without further delay. Plaintiff has, in this regard, filed numerous motions and other documents that purport to invoke Fed. R. Civ. P. 60(b). Plaintiff filed these documents on November 13, 2003 (D.E. 93), November 24, 2003 (D.E. 92), December 4, 2003 (D.E. 100), December 8, 2003 (D.E. 98), December 17, 2003 (D.E. 107), December 29, 2003 (D.E. 119), and February 13, 2004 (D.E. 117). All of the filings appear to seek default relief against the Defendants, typically demanding $128,000. (*E.g.*, D.E. 92 at 4; D.E. 199 at 1.) Defendants responded to most of these filings on January 29, 2004. (D.E. 112.)

Plaintiff's requests for a default judgment of $128,000 against the various defendant agencies of the State of Illinois are respectfully denied. Judge Norgle previously denied five of Plaintiff's requests for default relief in December 2002, and Plaintiff has advanced no good reason to revisit Judge Norgle's exercise of discretion on that issue. *See generally Silva v. City of Madison*, 69 F.3d 1368, 1377 (7th Cir. 1995) ("As this court has long held, '[t]he decision to enter default lies within the district court's discretion.'") (quoting *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)). In this regard, the Seventh Circuit has instructed that "[d]efault judgments are not favored, especially in hotly contested cases," *Isby v. Clark*, 100 F.3d 502, 504 (7th Cir. 1996), and the issue of whether Defendants ever were properly served certainly was hotly contested. Defendants should not be punished for agreeing to

accept service—so as to *begin* litigation on the merits—with a default judgment effectively finding that the Defendants *lose* on the merits. Defaults are often vacated to promote litigation on the merits, and Plaintiff has advanced no legitimate basis to deviate from that policy so as to enter a default now while the merits litigation is in full swing. *See generally Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983) (discussing ability of a trial court to vacate a default judgment, even if one has been entered).

A default judgment would be substantively inappropriate in this case under the facts presented, but also it bears mention that Rule 60(b) appears to be an inappropriate procedural vehicle, so Plaintiff's more recent requests are likewise procedurally defective. The Seventh Circuit has instructed that a Rule 60(b) motion "'applies only to a 'final judgment, order, or proceeding . . . .' It is a method of reopening a closed case." *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 773 F.2d 151, 154 (7th Cir. 1995) (quoting Rule 60(b) and citing, *inter alia*, 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.20 (1983)). Here, the case is open and is in the middle of litigation on the merits of the allegations that form the basis for Plaintiff's demand for $128,000. Plaintiff's requests for a default judgment are all denied with prejudice and the Court will not entertain any further default request absent an extraordinary change in circumstances (*e.g.*, if the Defendants were to refuse to proceed on the merits in contravention of express Court orders, a situation the Court certainly does not anticipate will occur).[3]

---

[3] In December 2003, Defendants moved to strike (D.E. 102) a "Public Request" that Mr. Slovinec apparently sent to Chief Judge Kocoras, in which Mr. Slovinec alleges a laundry-list of ethical misdeeds by various governmental officers and employees. (D.E. 95.) For example, Slovinec alleges that the various attorneys representing the State of Illinois and its officials, and various State officials themselves, are biased against him. (*Id.* at 1-2.) He also appears to contend that employees at the Office of the United States District Court Clerk may be biased against him. (*Id.* at 1.) Defendants contend that a similar filing of Plaintiff's was stricken in the

III.     Defendants' Motion to Dismiss

A.     Allegations and Background Information Relating to the Motion to Dismiss

Although it is somewhat difficult to parse the relevant facts from Slovinec's complaint

and other filings,[4] the Court has identified the following facts, which it will construe as true for

purposes of resolving Defendants' motion to dismiss.  On July 1, 1999, the Illinois Department

of Human Services ("IDHS") hired Slovinec—a white male—and two others for a one-year

program as a trainee.  (D.E. 1 at 3-4.)  Under the program, Slovinec served as a social services

career trainee for Medicaid patients at the Nursing Home Services Office.  (*Id.* at 3.)  Over the

course of the one-year program, he completed seven of eight objectives, receiving mostly

favorable ratings from Cynthia Faleti ("Faleti"), his supervisor.  (*Id.*)  The eighth objective,

which Slovinec failed to achieve, was to "demonstrate the ability to maintain a harmonious

working relationship with clients and/or representatives, co-workers, and community agencies."

(*Id.*, Exh. A at 3.)

Despite his mostly favorable evaluations, the IDHS (with three days notice) denied

---

past—*see* D.E. 43 (Order of 12/30/02, striking a filing of Plaintiff and putting it under seal)—and
Defendants further seek a leave-of-court policy against Mr. Slovinec as to any future filings.
(D.E. 102 at 2-3 & Exh. B.)  The Court respectfully declines the Defendant's motion.  As
discussed above, there is a strong presumption of public access as to court filings, and while the
Court appreciates that the Defendants believe the allegations are scurrilous, the allegations do
relate to at least alleged matters of government and public concern.  The Court also will not
impose a leave-of-court policy against Plaintiff, at least for now.  Plaintiff certainly has been
filing a number of pleadings, many of which appear to have limited relevance to the issues at
hand, but the case has been moving forward, albeit slowly, without such a policy.

[4] Among the documents Slovinec filed with his complaint in this Court was a copy of his
charge to the ILRB and the ILRB's dismissal of that charge.  (D.E. 1, Exhs. A & B.)  To the
extent Slovinec's ILRB charge contains relevant facts that clarify the factual allegations
contained in his complaint, the Court will adopt those facts herein for purposes of the Motion to
Dismiss.

Slovinec a permanent position when his one-year training program as a probationary employee ended, thus terminating his employment. (*Id.*, Exh. A at 16.) The IDHS did, however, offer positions to Slovinec's fellow trainees—both African-American women. (*Id.* at 4.)

On August 29, 2000, Slovinec filed a complaint with the Illinois Labor Relations Board ("ILRB") in which he claimed that the IDHS engaged in unfair labor practices as defined in the Illinois Public Relations Act, 5 ILCS 315 (2000). (*Id.*, Exh. A.) In his ILRB complaint, Slovinec charged that IDHS failed to notify him in a timely manner of a pre-disciplinary hearing. (*Id.*, Exh. A at 3-4.) Furthermore, Slovinec claimed he was terminated in retaliation for speaking out about various wrongdoing and mischief committed within the IDHS. (*Id.*, Exh. A at 11-13.) Slovinec also noted his belief that "Faleti was trying to support an existing set of African-American women workers who seemed leery of outsiders and less than comfortable with white males." (*Id.*, Exh. A at 15.) He also accused his office of "reverse racism" for not hiring enough white individuals. (*Id.*)

On April 30, 2002, following an investigation of Slovinec's charge, the ILRB dismissed Slovinec's complaint, finding that there was no issue of law or fact sufficient to warrant a hearing. (*Id.*, Exh. B at 1.) The order of dismissal was signed by Brian Reynolds, who was at the time the executive director of the ILRB's state panel. (*Id.*, Exh. B at 7.)

Sometime following his termination from IDHS, Slovinec filed for unemployment benefits. Slovinec registered with the Illinois Skills Match ("ISM") program of the Illinois Department of Employment Services ("IDES"). (D.E. 1 at 1.) The ISM is a computer program that attempts to match applicants with interviews for job opportunities. (D.E. 97, Exh. B.) Following his registration with the ISM program, Slovinec received notice of only one job

opportunity within approximately eighteen months. (D.E. 1 at 1.) Unfortunately, it happened that the one job match he did receive was in error—the opening was for an engineer, and Slovinec evidently did not qualify. (*Id.*)

On June 7, 2002, Slovinec filed suit in this Court. (*Id.*) His allegations appear to be as follows. As to the IDHS, Slovinec makes several claims. First, he alleges that the IDHS terminated him in violation of the State Whistleblower Act. (*Id.* at 2.) Slovinec also complains that Faleti's criticisms of his work were defamatory such that IDHS is liable. (*Id.* at 5-8.) Furthermore, Slovinec seems to allege that his IDHS termination was a form of reverse race discrimination in violation of Title VII. (*See, e.g.,* D.E. 1 at 4 (complaining of discrimination "against Mr. Slovinec's white race in an office where more than 30 of 35 caseworkers were African-American: this was evidenced when [a supervisor] insinuated Mr. Slovinec was an investigator and he was not; and he was too mistrustful of mistakes and slower work of African-American employees"); *id.* at 6 (alleging that Plaintiff's "mistakes were rare and management in this case, like many, attaches reverse racist negative labels to whites like Mr. Slovinec . . . .").)

Regarding the ILRB, Slovinec claims that the ILRB defamed him through the ILRB dismissal order, which stated that Slovinec had been terminated for poor work performance. (*Id.* at 1-2, 8.) Slovinec also sues the ISM (a program of the IDES), in essence alleging that the dearth of job offers Plaintiff received through the ISM program reveals that the State refused to make a good faith effort to help him find work. (*Id.* at 1.)

Finally, Slovinec nowhere in his actual complaint ever mentions the Fourteenth Amendment or any Due Process Clause claim. In one of the many attachments to Slovinec's complaint, however, he alleges a violation of "Joseph Slovinec's Substantive Due Process Rights

to Ask for Review of Information on Appeal." (*Id.* at 15.) This request appears to state that IDHS never "sent a written response to Mr. Slovinec's complaints and appeal of the decision of . . . [the IDHS] to discontinue his employment" on June 30. (*Id.*) In Plaintiff's response to defendants' motion to dismiss, he also appears to claim that the IDHS and ILRB violated his due process rights under the Fourteenth Amendment of the U.S. Constitution. These allegations are discussed further below.

      B.     Motion to Dismiss Standards

Rule 12(b)(1) provides for dismissal of a claim where a court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In considering a Rule 12(b)(1) motion to dismiss, a court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

On a Rule 12(b)(6) motion, the same presumption for well-pleaded factual allegations applies. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

As already noted, Slovinec's complaint and accompanying documents are not models of clarity. Indeed, the Court has found it challenging to sort out the properly pleaded factual allegations in Slovinec's complaint. A plaintiff's complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is

alleged, and if so, what it is." *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993); *see also* Fed. R. Civ. P. 8(a)(2) (requiring that a complaint consist of "a short and plain statement of the claim showing the pleader is entitled to relief").

Nonetheless, the Court recognizes Slovinec's *pro se* status in this case and is mindful of its obligation to construe his complaint generously. *See Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (directing that *pro se* complaints shall be generously construed and "are entitled to less stringent scrutiny than those prepared by counsel"). Furthermore, in deciding Defendants' motion to dismiss, the Court will consider the allegations contained not only in Slovinec's complaint, but also those contained in his response and other filings. *See Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992) (indicating that the court may look to other materials filed by a *pro se* plaintiff to evaluate the sufficiency of the complaint).

C     Substantive Analysis of the Complaint and Motion to Dismiss

1.     Slovinec's Reverse Race Discrimination Claim

Defendants have given Slovinec's complaint a generous reading and concluded that he may be alleging a reverse race discrimination claim against the IDHS for violation of Title VII of the Civil Rights Act (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* Indeed, the Court notes that when Slovinec challenges his termination from IDHS, he notes what he perceived to be a racial imbalance at his IDHS office during his employment there. (D.E. 1 at 4.) Slovinec also notes that while he did not receive an offer of permanent employment, his fellow trainees, both African-American, did receive offers. (*Id.*)

Construing Slovinec's complaint generously, it does appear that Slovinec may be asserting a reverse race discrimination claim under Title VII. However, as Defendants point out,

Slovinec has not alleged or claimed that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") as he is required to do. A plaintiff must file an employment discrimination complaint within 300 days of the alleged discriminatory behavior. 42 U.S.C. § 2000e-5(e); *see also Cheek v. W. & S. Life Ins.*, 31 F.3d 497, 499 (7th Cir. 1994) (holding that a Title VII plaintiff must file a charge with the EEOC encompassing all claims the plaintiff may eventually raise in court). If a plaintiff fails to file a timely complaint with the EEOC, the plaintiff will be precluded from bringing such a claim in federal court. *See Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995).

Defendants argue that Slovinec's apparent failure to file an EEOC complaint within the applicable 300-day period removes his reverse race discrimination case from federal jurisdiction. (D.E. 97 at 3.) Seventh Circuit authority indicates, however, that a plaintiff's administrative filing requirement is not jurisdictional. *See, e.g., Cheek*, 31 F.3d at 500. Instead, meeting the administrative filing requirements is in the nature of a "condition precedent" as opposed to a jurisdictional prerequisite. *See id.* (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985)).

The Court agrees with Defendants that Slovinec has not properly alleged that he has complied with the requirement that he file an EEOC complaint within 300 days of the act of discrimination, which this Court will assume took place on June 30, 2002, when Slovinec was not kept on as a permanent employee after his probationary period ended. Nor has Slovinec challenged, in any of his many lengthy filings, the argument made in Defendants' motion to dismiss that he has not met the procedural requirements to advance his putative reverse racism claim. Thus, Slovinec has not shown that he has fulfilled his administrative "condition

precedent" in order to allege a Title VII claim in this Court. *See, e.g., United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *McIlveen v. Stone Container Corp.*, No. 87-C-3593, 1987 WL 17170, at *3 (N.D. Ill. Sept. 14, 1987) (dismissing Title VII claim for failure to allege specifically the occurrence of condition precedent). The Court therefore grants Defendants' motion to dismiss Slovinec's reverse race discrimination claim. Due to Slovinec's *pro se* status and the lack of clarity in his various filings, however, the Court dismisses his Title VII claim without prejudice. If Slovinec can show, for example, that he has properly filed a claim with the EEOC within the required period of time (and met all other legal requirements), he may refile a reverse racism claim that clearly sets forth his right to relief.

###### 2. Slovinec's Fourteenth Amendment Contentions

As Defendants point out, Slovinec's Fourteenth Amendment arguments are contained nowhere in his complaint. In addition, the limited and vague reference to the Fourteenth Amendment in one of the many attachments to Plaintiff's complaint appears to allege a relatively limited set of issues as opposed to the other potential Fourteenth Amendment issues that Plaintiff alludes to in his later briefs and filings. The Court will nonetheless regard Slovinec's Fourteenth Amendment arguments as pleaded in his complaint—at least to the extent that the Court can discern what he is actually alleging. These Fourteenth Amendment issues are discussed below; however, the Court first needs to address the threshold issue of whether Plaintiff can allege any cause of action directly in the case under the Fourteenth Amendment, because the law is clear that he cannot.

###### a. 42 U.S.C. § 1983

Precedent teaches that a plaintiff has no direct cause of action under the Fourteenth

16

Amendment, and therefore Slovinec must proceed under 42 U.S.C. § 1983 in order to assert any Fourteenth Amendment claims against Defendants. *See, e.g., Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 732 n.3 (7th Cir. 1994) ("Congress has provided a means to vindicate [Fourteenth Amendment] rights in 42 U.S.C. § 1983."); *Bennett v. Roberts,* No. 96-C-6917, 2001 WL 290188, at *10 (N.D. Ill. Mar. 16. 2001) ("No direct cause of action under the Fourteenth Amendment exists. A litigant must proceed under §1983.") (citing *Baxter,* 26 F.3d at 732 n.3); *Janowicz v. CHA,* No. 90-C-114, 1991 WL 96467, at *1 (N.D. Ill. May 17, 1991) ("[A]lthough plaintiff purports to allege a direct cause of action under the Fourteenth Amendment, the appropriate claim must be a statutory claim under . . . 42 U.S.C. §1983."). This is fatal to Plaintiff's due process claims against Defendants.

The relevant language of § 1983 specifies that a "person" acting under color of the law can be held liable for depriving a person of any of a variety of constitutional rights, privileges, or immunities. *See* 42 U.S.C. § 1983. It is a well established principle, however, that neither a State nor a State agency is a "person" for purposes of § 1983. *See, e.g., Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64 (1989). The IDHS and ILRB are Illinois state agencies. *See* 20 Il. Comp. Stat. 5/5-15 (2004) (listing IDHS as one of the "[d]epartments of State government"); 5 Il. Comp. Stat. 430/5-50 (2004) (naming ILRB as an agency of the State, whose members are appointed by the Governor); *accord, e.g., City of Belvedere v. Illinois State Labor Relations Bd.,* 692 N.E.2d 295 (Ill. 1998) (explaining that the Board is "an administrative agency" of the State "responsible for administering and enforcing the Illinois Public Labor Relations Act"). (Slovinec does not appear to allege that the IDES's ISM program has violated any right secured by the Fourteenth Amendment, but it bears mention that the IDES is also a "[d]epartment of State

government" under Illinois law. *See* 20 Il. Comp. Stat. 5/5-15 (2004).)

Under clearly established precedent, therefore, Slovinec may not sue either the IDHS or ILRB (or the IDES and its program) because none of these portions of the government of the State of Illinois is a "person" within the meaning of § 1983. As explained, Slovinec must bring his Fourteenth Amendment claims under the rubric of § 1983, and because Slovinec cannot sue either the IDHS or the ILRB under § 1983, it follows that he cannot sue the state agency defendants for alleged violations of the Fourteenth Amendment.[5]

  b.    Fourteenth Amendment Issues

Alternatively, and independently, even if Slovinec could raise the various Fourteenth Amendment issues he identifies at various points (almost exclusively in his briefs, and never in his actual complaint), it appears clear that his allegations would not state a claim.

In the Court's best estimation, Slovinec's Fourteenth Amendment references principally raise claims that: (1) the IDHS violated Slovinec's due process rights when it terminated him and then gave false reasons for the termination; and (2) the ILRB violated Slovinec's due process rights "when [it] did not give Plaintiff detailed notification of charges, did not listen to his objections, and left him unable to clear [his] name after injury from defamation in public records." (D.E. 106, Pl. Resp. Br. at 6-7.)

---

[5] *Vermont Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000), teaches that a Court should resolve the propriety of suit under a statute such as §1983 before addressing Eleventh Amendment defenses that are asserted. *Id.* at 779. As a result, the Court need not address at this juncture the Eleventh Amendment arguments proffered by Defendants. These arguments are not meaningfully addressed by Plaintiff in his filings and likewise appear to bar his suit in this forum. *See, e.g., Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 731 (7th Cir. 1994) (discussing the "general rule that the Eleventh Amendment bars §1983 actions against a state or a state agency").

Viewing Slovinec's claims in a generous light, it seems that he alleges that the IDHS, when it responded to Slovinec's objections concerning his state employment situation, presented to the ILRB false statements concerning his termination. (D.E. 1 at 5-7.) These false statements stigmatized Slovinec's reputation, and, considered in conjunction with his termination and his inability to respond to the false statements, deprived him, without due process, of a liberty interest recognized under the Fourteenth Amendment. *See generally Coliaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976). Similarly, Slovinec appears to allege that the ILRB, by dismissing his objection without holding a hearing, denied him the ability to respond to the IDHS's false statements. Moreover, Slovinec argues that the ILRB's publication of its order of dismissal on its public web site also stigmatized him and prevented him from gaining employment. (D.E. 134 at 1.) In Slovinec's view, therefore, the ILRB's actions also deprived him of due process under the Fourteenth Amendment.

i.    Procedural Due Process Issues

Taking into consideration the variety of mischief that Slovinec accuses Defendants of committing, Slovinec seems to allege that neither the IDHS or the ILRB afforded him procedural due process. These allegations relate to Slovinec's view that neither agency properly followed its procedures in his termination and the proceedings that followed. However, well-established precedent makes clear that "the failure to conform with the procedural requirements guaranteed by state law does not by itself constitute a violation of federal due process." *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 706-07 (7th Cir. 2002) (citing, *inter alia, Wallace v. Tilley*, 41 F.3d 296, 301 (7th Cir. 1994) ("The denial of state procedures in and of itself does not create inadequate process under the federal constitution.")). Thus, even if the IDHS or the ILRB failed

19

to follow state statutory procedures respecting Slovinec's case, Slovinec may not automatically transform these failures into a federal due process claim for which the Court may grant relief.[6]

ii.    "Stigma Plus" Due Process Claims

Slovinec seemingly asserts that his inability to respond to the IDHS's justifications for his termination, and the ILRB's dismissal of his unfair labor practices charge, stigmatized him and prevented him from finding employment. According to Slovinec, the inability to respond and "clear his name" was a deprivation of due process under the Fourteenth Amendment.

In this regard, Seventh Circuit authority does provide that, in certain circumstances discussed further below, "[t]he infliction of a stigma to reputation accompanied by . . . a discharge states a claim for deprivation of liberty without due process within the meaning of the Fourteenth Amendment." *See Colaizzi*, 542 F.2d at 973. Slovinec, in one of his briefs, cites *Colaizzi* to support his view that he has been denied due process. (D.E. 106, Pl. Resp. Br. at 7.)

Other Seventh Circuit authority, however, clarifies that Slovinec has no due process-stigma claim on the facts as alleged. First, it is not clear that Slovinec has suffered any cognizable stigma under Seventh Circuit law. Any alleged slur on Slovinec's reputation to give

---

[6] In one of Plaintiff's various references to the Fourteenth Amendment, he speaks without any meaningful factual context to the issue of "representation by counsel." (D.E. 1 at 16.) Other portions of Slovinec's attachments to his complaint make clear that Slovinec did not ask for an attorney during his pretermination hearing as a probationary employee, but rather wanted a union steward to attend. (D.E. 1 at 38 ("Mr. Slovinec specifically remembers he asked the A.F.S.C.M.E. steward, Mrs. Jackie Jurgens, to attend it and Mr. Whitehorn told Mrs. Jurgens she could not attend the meeting.").) In the ILRB's Dismissal Order (one of the many attachments to the Complaint), the ILRB stated that, under the applicable union agreements, A.F.S.C.M.E. officials are not entitled to represent trainee employees (as Mr. Slovinec admittedly was) during the twelve-month probationary period at issue. Mr. Slovinec does not allege that this union agreement concerning whether its stewards could represent probationary employees was unconstitutional (assuming even that A.F.S.C.M.E. is a state actor).

20

rise to a liberty interest requiring a due process hearing must have occurred at or near the time of

his termination. *See Hadley v. County of DuPage*, 715 F.2d 1238, 1246 (7th Cir. 1983). In

addition, and independently, the Seventh Circuit has instructed that

> not every remark which may arguably affect one's reputation violates due process
> if made by a government official without a hearing, for the [F]ourteenth
> [A]mendment protects only against charges that might *seriously* damage [one's]
> standing and associations in his community.

*Lipp v. Bd. of Educ. of City of Chicago*, 470 F.2d 802, 805 (7th Cir. 1972) (emphasis added and

internal quotation marks omitted). Slovinec must show that Defendants "impose[d] a stigma or

other disability . . . which forecloses other opportunities. . . ." *Perry v. Fed'l Bureau of*

*Investigation*, 781 F.2d 1294, 1300 (7th Cir. 1986) (en banc) (citation omitted).

As best as one can tell, it appears that the IDHS issued to the ILRB a response to

Slovinec's unfair labor practices charge containing justifications for terminating plaintiff. (D.E.

1, Exh. B.) This IDHS response, presumably filed shortly after Slovinec filed his charge with the

ILRB on August 29, 2000, contained the allegedly defamatory material which stigmatized

Slovinec. (*Id.*) The IDHS's response, therefore, is arguably close in time to Slovinec's June 30,

2000 termination. Any defamation on the part of the ILRB, however, took place when the ILRB

issued its order dismissing Slovinec's charge on April 30, 2002, at the earliest. (There may be

immunity doctrines that preclude defamation suits relating to the substance of opinions issued by

courts or other public adjudicatory bodies, as Defendants suggest, but the Court need not resolve

that issue here.) The very remoteness in time of the ILRB's alleged defamatory statement would

seem to preclude Slovinec from claiming a violation of due process. *See Hadley*, 715 F.2d at

1247 (holding that defendant's statement, "almost two years after [plaintiff's] termination, does

not give rise to a liberty interest since the requisite nexus between the allegedly stigmatizing statement and the date of [plaintiff's] dismissal is nonexistent").

What is more, and independently, Slovinec does not appear to be able to have suffered constitutionally actionable "stigma" within the meaning of Seventh Circuit precedent by virtue of the allegedly offending IDHS statements. For example, the justifications in the IDHS response that Slovinec specifically alleges to be defamatory are: (1) "[Slovinec] was terminated because he failed to demonstrate the ability to maintain a harmonious working relationship with clients, their representatives, co-workers, and community agencies" (D.E. 1 at 5); (2) "[Slovinec] also refused to accept constructive criticism regarding the responsibilities of his assignment and he refused to take corrective action to resolve work related issues" (D.E. 1 at 5); (3) "[Slovinec] displayed an unwillingness to follow verbal and written instructions" (D.E. 1 at 6); (4) "In several instances when errors or improper entries would be detected in his data entry, rather than accept guidance to rectify the problem, [Slovinec] would blame unknown individuals for misappropriating his computer password and entering false information into client's [sic] records" (D.E. 1 at 6); and (5) "[Slovinec] exhibited odd behavior such as conducting unauthorized, unannounced inspections of client nursing homes during off duty hours." (D.E. 1 at 7.)

The statements in the IDHS's response to Slovinec's ILRB charge do not rise to the level of the reputation-damaging stigma recognized as constitutionally cognizable by the Seventh Circuit. In this regard, the Seventh Circuit has instructed that "by 'stigma' the [Supreme] Court was thinking of something considerably graver than a charge of failure to perform a particular job lying within the employee's power to correct." *Hadley*, 715 F.2d at 1245 (citations omitted). The Seventh Circuit has found that statements causing stigma would likely "rise to the level of

22

the degrading and unsavory charges which would expose [plaintiff] to public embarrassment and ridicule." *Id.* (citations omitted). According to the Seventh Circuit, examples of such stigma might include "charges of dishonesty, immorality, disloyalty, Communism, subversive activities, alcoholism, or narcotics violations." *Id.* (citation omitted). The IDHS's allegedly defamatory statements do not even resemble the stigmatizing comments that the Seventh Circuit has recognized as requiring that a plaintiff have the right to process to clear his name.

Therefore, the statements in the IDHS response and the quoted portions in the ILRB dismissal simply cannot be read as having "impose[d] a stigma upon [Slovinec] which foreclosed his employment opportunities." *Perry*, 781 F.2d at 1302. Even if the comments in Slovinec's IDHS evaluation would have deterred a prospective employer from hiring him, Slovinec does not allege (nor can the Court anywhere find) that the IDHS published or otherwise released the evaluation to any outside party other than the ILRB. Thus, the IDHS's comments could not have prevented Slovinec from landing a job at any time from August 2000 until the ILRB published the dismissal of Slovinec's case in April 2002. And, as previously discussed, Slovinec cannot show the required temporal nexus between his termination and the ILRB's publication of the allegedly defamatory remarks sufficient to claim deprivation of a liberty interest. *See Hadley*, 715 F.2d at 1247. In the nineteen-month interim, Slovinec could have sought other employment, and he cannot show that the IDHS evaluation prevented him from doing so. *See generally Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 575 (1972) ("It stretches the concept of liberty too far to suggest that a person is deprived of liberty when he simply is not rehired in one job but remains as free as before to seek another."). And even if the IDHS *did* make its evaluation available to prospective employers, Slovinec cannot show that he has been deprived of a liberty

23

interest.  The Seventh Circuit has held that "a liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential employers." *Perry*, 781 F.2d at 1302 (citing *Lipp*, 470 F.2d at 805).

All the same, even if the nature of the IDHS statements warranted that Slovinec should have the opportunity to clear his name, it appears that Slovinec in fact had appropriate opportunities to do so.  For example, in Slovinec's ILRB charge of unfair labor practices, he responds to several of his supervisor's complaints regarding his performance—these complaints are contained in Slovinec's performance evaluations, which served as the basis for the IDHS's response to Slovinec's charge.  (D.E. 1, Exh. A at 7-8; Exh. B at 3, 5.)  Moreover, Illinois's statutory procedures governing charges of unfair labor practices do not allow for a plaintiff to submit a reply to an employer's response. *See* 5 Il. Comp. Stat. 315/11 (2004).  Slovinec cannot therefore claim that he was denied due process when he could not reply to the IDHS response, for example, with another brief.  And there would appear to be no serious constitutional argument (Slovinec has offered none) that would require—as a matter of federal constitutional law—the allowance of a reply brief in a particular adjudication.  Some District Courts in the Northern District of Illinois, for example, routinely resolve issues on the basis of a brief and a response; due process often requires an opportunity to be present one's position in some form or fashion, but the Fourteenth Amendment is not typically seen as governing how many briefs a litigant can file regarding an issue, or how long those briefs can be, or other such issues.

Slovinec also had the opportunity to respond to the ILRB's dismissal, which quoted the allegedly defamatory statements from the IDHS response, by appealing the ILRB's decision to the appropriate Illinois circuit court.  735 Il. Comp. Stat. 5/3-104 (2004).  Slovinec chose to

24

forego his procedural redress in the Illinois courts, and chose instead to take his chances through other avenues of complaint. ( D.E. 106, Pl. Resp. Br. at 10 ("[Brian] Reynolds had the power to dismiss the [charge] and Mr. Slovinec did not want to ask Appellate Court to overturn that particular order because Plaintiff did not trust [ILRB] enough to reopen the investigation during 2002. . . .").)

Thus, "even assuming that [Slovinec] has a liberty interest which the government's actions have infringed, [Slovinec] has received full measure of the process he is due." *Perry*, 781 F.2d at 1303. Slovinec, like the plaintiff in *Perry*, had ample opportunity to clear his name through a variety of procedural channels offered by the state of Illinois. *See id.* Specifically, Slovinec challenged allegedly defamatory portions of his IDHS supervisor's evaluation when he filed his ILRB charge. (D.E. 1, Exh. A. at 7-8.) Following the ILRB's dismissal of his charge, he submitted an "Appeal of Dismissal and Grounds for Lawsuit" in which he systematically refuted each of the allegedly defamatory IDHS statements. (D.E. 1, Exh. C.) He admitted that he could avail himself of judicial review of the ILRB dismissal, but as explained above, he opted to forego the appellate process afforded by the state of Illinois. (D.E. 106, Pl. Resp. Br. at 10.) In short, Slovinec experienced no denial of due process in his dealings with Defendants.

In conclusion, the Court dismisses Slovinec's Fourteenth Amendment claims against the IDHS and ILRB for multiple reasons, as explained above. Given the lack of clarity in Slovinec's *pro se* complaint and other court filings, this dismissal is without prejudice.

3. Slovinec's State Law Claims

Slovinec's remaining claims arise under Illinois state law. Specifically, Slovinec asserts the following state law claims against Defendants: defamation claims against IDHS and ILRB, a

claim against the IDHS for retaliatory discharge in violation of the State Whistleblower

Protection Act, a claim against the ILRB for erroneous treatment of Slovinec's unfair labor

practices charge under the Illinois Public Labor Relations Act, and a vague claim against the ISM

for "refus[al] to make a good faith attempt to help Mr. Slovinec find work. . . ." (D.E. 1.)

Because all claims that ground federal court jurisdiction in the first instance have been

dismissed, the only possible means by which the Court could continue to exercise jurisdiction

over Slovinec's remaining state law claims is 28 U.S.C. § 1367(a).[7] Section 1367 authorizes a

federal court to exercise supplemental jurisdiction over state law claims, but does not mandate

that the court exercise such jurisdiction. *Id.* Indeed, the statute provides that a district court

"may decline to exercise supplemental jurisdiction" over remaining state law claims if the court

has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). A

district court's discretion to relinquish supplemental jurisdiction is "'almost unreviewable,'"

particularly when all federal jurisdictional claims have been dismissed from the case and only

state law claims remain. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728

(7th Cir. 1998) (quoting *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989)); *see also id.*, 140

F.3d at 728 ("'At that point, respect for the state's interest in applying its own law, along with the

state court's greater expertise in applying state law, become paramount concerns.'" (quoting

*Huffman*, 865 F.2d at 923)).

In the case at bar, the Court declines to exercise whatever supplemental jurisdiction it

may have over Slovinec's remaining state court claims. Slovinec's purported justifications for

---

[7] Slovinec is an Illinois citizen—or at least appears from all evidence, including the address he submitted to the Clerk of Court, to be one—and the Defendants are all parts of the Illinois state government, so no diversity jurisdiction is possible.

federal jurisdiction largely relate to his state defamation claims, and the Court respectfully declines to exercise jurisdiction over these claims, given Illinois's interest in applying its own law. In addition, the Defendants raise a number of defenses that largely turn on state law issues. Finally, and most important, the Court is mindful of "the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). The Court follows suit, and dismisses Slovinec's state law claims without prejudice. If Plaintiff can properly plead federal claims in an amended complaint, then his state law claims may be appropriate matters for litigation in federal court, and Plaintiff is free to replead his state law claims in his amended complaint attempt, if any. *See generally Amzak Corp. v. Reliant Energy, Inc.*, No. 03-C-0877, 2004 WL 407027, at *5-6 (N.D. Ill. Jan. 28, 2004); *Binkley v. Edwards Hosp.*, No. 02-C-2508, 2004 WL 719527, at *3 (N.D. Ill. Mar. 31, 2004). However, if Plaintiff cannot state a federal claim against the Defendants after the next attempt, Plaintiff will be required to pursue any potential state law remedies he may have through the Illinois courts.

IV.    Conclusion

For the reasons explained above, Defendants' motion to dismiss is granted and Plaintiff's complaint is dismissed without prejudice. Plaintiff is given 21 days from the date of this order to file an amended complaint so as to determine conclusively whether his federal claims against the Defendants are defective at law. Plaintiff's many requests for default judgment against Defendants are denied with prejudice. Plaintiff's request to seal public court records and other requests are denied. So is Defendants' request to impose a leave-of-court policy against future filings by Plaintiff and Defendants' request to strike a filing from the court record.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: ___APR 3 0 2004___